UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEMETRIUS JEFFERSON,<br><br>Defendant. | Case No. 14-cr-00105-EMC-1<br><br>**ORDER GRANTING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>Docket No. 34 |

Petitioner Demetrius Jefferson ("Mr. Jefferson") asks the Court to vacate, set aside, or correct his sentence. *See* Docket No. 34 ("Motion"). The United States ("Government") opposes. *See* Docket No. 48 ("Opposition").

## I.    BACKGROUND

A.    Facts

Pursuant to 18 U.S.C. section 922(g), Mr. Jefferson was sentenced November 12, 2014, for being a felon in possession of a firearm and ammunition. Mot. at 1. Pursuant to USSG section 2K2.1(a)(4)(A), this Court enhanced his sentence on the basis that he had a prior conviction for a violent felony. *Id*. Specifically, Mr. Jefferson was assigned an offense level of 20 based on his previous "felony violation of California Penal Code Section 487(c) - Grand Theft From Person" ("Section 487"), and his sentence was enhanced based on this higher offense level. Docket No. 11 ("PSR") at 5; *see also* Mot. at 7. With this enhancement and other adjustments, Mr. Jefferson's total offense level was calculated to be 19. *Id*. The guideline range for this offense level was 63-78 months' imprisonment. *Id*. The Court imposed a sentence of 54 months. *Id*. at 2.

But for the enhancement, Mr. Jefferson concedes his total offense level would have been 13, and the applicable guideline range would have been 33-41 months' imprisonment. Id. at 1.

The Government appears to agree. *See* Opp. at 11 ("If defendant were not subject to § 2K1.2(a)(4)(A), his guidelines range would have been 33 to 41 months' imprisonment").

B.  Law

Convicted felons are prohibited from possessing firearms. 18 U.S.C. § 922(g). If the felon has been previously convicted of a "violent felony," he or she faces a heightened sentence. For example, three or more convictions for a violent felony or drug offense results in an automatic prison term of at least fifteen years. *See* 18 U.S.C. § 924(e). If the felon has even one violent felony conviction, this will heighten his or her offense level, which enhances the sentence imposed under the Sentencing Guidelines ("Guidelines"). *See* USSG § 2K2.1 ("Section 2K2.1") (describing base offense levels and noting enhancements for a prior "crime of violence"); *see also* USSG § 4B1.2 ("Section 4B1.2") (defining "crime of violence"). At the time Mr. Jefferson was sentenced,[1] the definition of a "crime of violence" stated that

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 4B1.2 (2009) (emphasis added). The italicized portion of this code section was known as the

---

[1] Following amendments in 2016, the Section now states that

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. 5845(a) or explosive material as defined in 18 U.S.C. 841(c).

§ 4B1.2.

2

residual clause ("Residual Clause").

After Mr. Jefferson's conviction, the United States Supreme Court issued a decision invalidating a clause of the Armed Career Criminal Act of 1984 ("ACCA"). *See Johnson v. U.S.*, 135 S.Ct. 2551 (U.S. 2015). The ACCA included a provision identical to the Residual Clause in the Guidelines. It, too, defines a "crime of violence" as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The defendant in *Johnson* had received an enhanced sentence under the ACCA's residual clause. *Johnson*, 135 S.Ct. at 2556. When he was sentenced, the Supreme Court had issued four decisions interpreting the ACCA's residual clause, and had twice rejected arguments that it was void for vagueness. *Id.* (citing *James v. United States*, 550 U.S. 192, 210 n.6 (2007); *Sykes v. United States*, 564 U.S. 1, 131 S.Ct. 2267, 2276-77 (2011)).

The Supreme Court reversed course, and held that the ACCA's residual clause was so vague that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* at 2257. Because the clause "ask[ed] whether the crime 'involves conduct' that presents too much risk of physical injury," courts were required to consider how crimes played out "in 'the ordinary case,' and to judge whether that abstracting presents a serious potential risk of physical injury." *Id.* This required judges to determine what constitutes "the 'ordinary case' of a crime," and left undefined and "force[d] courts to interpret 'serious potential risk.'" *Id.* at 2557-58. The Court observed that this double-uncertainty "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." *Id.* at 2557; *see also id.* at 2560 ("Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process."). Because of this uncertainty, the Court overruled its prior decisions and "h[e]ld that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563.

## II.  LEGAL STANDARD

Section 2255 of title 28 of the United States Code allows "[a] prisoner in custody under sentence of a court" to ask the sentencing court "to vacate, set aside or correct the sentence" where the prisoner claims that

3

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack

28 U.S.C. § 2255(a) ("Section 2255"). The prisoner has one year to bring a Section 2255 motion, measured from "the latest of"

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2255(f). Here, Mr. Jefferson proceeds upon the theory that the Supreme Court has "newly recognized" a right. Mot. at 10.

## III.  DISCUSSION

The Court may consider claims of constitutional error in Section 2255 proceedings. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *United States v. Mett*, 65 F.3d 1531, 1537 (9th Cir. 1995) (recognizing Sixth Amendment right to counsel claim is cognizable). Here, Mr. Jefferson argues that the Court committed constitutional error by relying on a total offense level of 19 to calculate his sentence, where that offense level was predicated on conduct which no longer qualifies as a violent felony under *Johnson*.

A.  Mr. Jefferson Did Not Procedurally Default His Claim

The Government argues Mr. Jefferson procedurally defaulted his *Johnson* claim by failing to raise it during his direct appeal. Opp. at 5. Mr. Jefferson appears to concede that he failed to raise his claim on direct appeal, but argues that this failure is excused by cause and prejudice. Reply at 1.

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection

4

was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *accord United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007). ("most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence.").

As to the **cause** prong, the parties dispute whether Mr. Jefferson's claim is truly "novel." The Government contends that it is not, because "the Ninth Circuit had long held that the Sentencing Guidelines could be challenged on vagueness grounds." Opp. at 6 (citing *United States v. Johnson*, 130 F.3d 1352 (9th Cir. 1997). Mr. Jefferson argues it is, because the Supreme Court "'explicitly overruled' two prior Supreme Court decisions" upholding the Residual Clause, and "overturned a longstanding and widespread practice of imposing punishment under" the Residual Clause. Reply ay 2-3 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

Mr. Jefferson has shown cause under *Reed*. In that case, the Supreme Court "h[e]ld that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed*, 468 U.S. at 16. At least one circumstance that renders a claim "novel" is present here: as noted *supra*, *Johnson* "explicitly overruled" previous Supreme Court precedent. *Id.* at 17; *see also Johnson*, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in *James* and *Sykes* are overruled.").

The Government's argument to the contrary is unpersuasive. Though the Government is correct that the Ninth Circuit has allowed the Guidelines to be challenged for vagueness, it does not cite any Ninth Circuit precedent suggesting the applicable Guideline was vague. Mr. Jefferson was sentenced after the Supreme Court had upheld the Residual Clause. *See James*, 550 U.S. at 210 n.6; *Sykes*, 564 U.S. at 28 (Scalia, J. dissenting). There was thus binding precedent compelling this Court to reject any vagueness challenge Mr. Jefferson brought, had he brought one. Mr. Jefferson was not compelled to make an argument that was inevitably doomed, and the

5

Government's insistence that he should have would erase the test set out by the Supreme Court in *Reed*. Accordingly, Mr. Jefferson has shown cause.

As to the **prejudice** prong, Mr. Jefferson must show that the error at issue "worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170 (emphasis in original). The Government asserts that Mr. Jefferson has made no showing of prejudice, and has failed to show the Court even relied on the Guidelines when sentencing Mr. Jefferson. Opp. at 7 (arguing the Court "had nearly unfettered discretion" in imposing a sentence).

The Supreme Court dealt with this precise question in *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016). The petitioner there was sentenced to 77 months imprisonment, the minimum term under his calculated offense level of 21. *Id*. at 1343. On appeal, the petitioner argued the court had "erred in calculating his criminal history points, resulting in the application of a higher Guidelines range." *Id*. at 1344. The government argued there was no prejudice, because the correct range was 70 to 87 months and the petitioner's sentence fell squarely in the middle of that range. *Id*. at 1344. The Supreme Court rejected this argument. It noted that the Guidelines are a "lodestar" for sentencing even where the district judge departs from them. *Id*. at 1346.

> From the centrality of the Guidelines in the sentencing process it must follow that, when a defendant shows that the district court used an incorrect range, he should not be barred from relief on appeal simply because there is no other evidence that the sentencing outcome would have been different had the correct range been used.
>
> In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.

*Id*. On the other hand, if the record shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," then the petitioner will not be able to show prejudice. *Id*. at 1346-47.

Here, Mr. Jefferson's offense level was calculated to be 22, based on the enhancement under Section 2K2.1(a)(4)(A). Mot. at 1. The guideline range for this offense level was 63-78 months. *Id*. Relying in part on the Guidelines, the Court sentenced Mr. Jefferson to 54 months in prison, a slight variance below the then applicable Guidelines range. *Id*. at 2. Mr. Jefferson argues that "[w]ithout the enhancement for a prior crime of violence, Mr. Jefferson's resulting

6

1  guideline range would have been 33-41 months based on a total offense level of 13 and a criminal
2  history category of VI." Mot. at 1.[2]  While the imposed sentence falls outside the as-calculated
3  range, it is significantly higher than the range applicable to the correct offense level.  The Court
4  accounted for the Guidelines in composing the sentence of 54 months.  Had the proper Guidelines
5  range been applied, the 54 month sentence would have been a substantial upward variance rather
6  than a slight downward variance.

    Accordingly, Mr. Jefferson has demonstrated prejudice.

B.  Retroactivity

    The Court has generally limited retroactive application of its constitutional holdings, such that new procedural rules will not apply retroactively on collateral review.  *See Teague v. Lane*, 489 U.S. 288, 310 (1989) (generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced"); *see also Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013).  Thus, before Mr. Jefferson may benefit from *Johnson*, *Johnson* must apply retroactively to sentenced imposed under the Guidelines.

    1.  *Johnson* Applies Retroactively

    The Supreme Court has already held that Johnson applies retroactively to the ACCA.  In *Welch v. United States*, it noted there is are two exceptions to the Teague doctrine. 136 S. Ct. 1257, 1264 (U.S. 2016).  "First, '[n]ew *substantive* rules generally apply retroactively.'"  *Id*. (quoting *Schriro v. Summerlin,* 542 U.S. 348, 351 (2004)).  Second, a new procedural rule will be applied retroactively if it is a "watershed rule[]," "implicating the fundamental fairness and accuracy of the criminal proceeding."  *Id*. (citation and quotation marks omitted).  *Welch* argued that Johnson had announced a new substantive rule.  *Id*.

    The Court held that "Johnson is [] a substantive decision and so has retroactive effect . . . in cases on collateral review."  *Id*. at 1265.  It observed that a rule is substantive "'if it alters the range of conduct or the class of persons that the law punishes,'" while a procedural rule "'regulate[s] only the matter of determining the defendant's culpability.'"  *Id*. at 1264-65 (citation

---

[2] The Government argues that Mr. Jefferson should not be resentenced, but does not directly challenge this assertion.  *See generally*, Opp.

7

1  omitted). Because *Johnson* altered the class of persons subject to the ACCA, it announced a
2  substantive rule. *Id*. at 1265 ("[a]fter *Johnson*, the same person engaging in the same conduct is
3  no longer subject to the Act").

       2.     *Johnson* Applies to the Guidelines

As explained above and as the Government concedes, the Supreme Court has held that *Johnson* announced a substantive rule. *See* Opp. at 9 (citing Welch, 136 S. Ct. at 1265). The Government argues that *Johnson* may be substantive when applied to convictions under the ACCA, but it is procedural when applied to the Guidelines. Opp. at 10. However, the rule here is substantive even when applied to the Guidelines because it alters the scope of criminal conduct. Moreover, the Ninth Circuit has previously held that decisions limiting the ACCA remain substantive even when applied to the Guidelines. Finally, though neither the Supreme Court nor the Ninth Circuit has ruled on whether *Johnson* applies to the Guidelines,[3] the majority of Circuit Courts of Appeal that have decided this issue hold that the Residual Clause in the Guidelines is unconstitutionally vague under Johnson.

       a.     <u>The Advisory Nature of the Guidelines is not Dispositive</u>

As explained above, the new rule is substantive when applied to the ACCA, *see Welch*, 136 S. Ct. at 1265. Its character does not change when it is applied to the Guidelines.

A substantive rule "alters the range of conduct or the class of persons that the law punishes," while a procedural rule "regulate[s] only the *manner of determining* the defendant's culpability." *Schriro*, 542 U.S. at 353 (emphasis in original). The *Johnson* rule is more substantive than procedural. The *Johnson* rule does not affect the manner in which Mr. Jefferson's culpability is determined. Instead, it removes a class of conduct from that which is considered a "violent felony" in the context of sentencing. Thus, because it "alters the range of conduct . . . that the law punishes," the *Johnson* rule is substantive, not procedural. This is so even when applied to the Guidelines. *See Peugh v. United States*, 133 S. Ct. 2072, 2088 (U.S. 2013)

---

[3] *See Beckles v. United States*, 136 S. Ct. 2510 (U.S. 2016) (granting certiorari to decide whether *Johnson* applies to the Guidelines); *United States v. Lee*, 821 F.3d 1124, 1127 & n.2 (9th Cir. 2016) (declining to rule on this issue).

8

(describing the Guidelines as a "substantive 'formula'"). *Accord United States v. Dean*, -- F. Supp. 3d --, 2016 WL 1060229 (D. Or. March 15, 2016) ("*Johnson* substantively changes the conduct by which federal courts may enhance the sentence of a defendant under the Guidelines. Thus, *Johnson* does not 'regulate only the *manner of determining* the defendant's culpability' like a procedural rule would.").

The fact that the Guidelines are technically advisory does not change this analysis. The Guidelines are an important part of the sentencing calculus. "[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007) (citing 18 U.S.C. § 3553(a)(4) ("Section 3553") (requiring district courts to consider the Guidelines when sentencing defendants)).

*Peugh v. United States* is instructive. There, the Supreme Court held that the Ex Post Facto Clause applies to the Guidelines as well as to a statute. 133 S.Ct. 2072, 2086-87 (2013). The defendant in that case had committed a crime when the recommended sentence was 30 to 37 months; the Guidelines' recommendation had climbed to 70 to 87 months by the time he was sentenced. *Id*. at 2085. The Supreme Court held that the Ex Post Facto clause was violated when the defendant was sentenced under the later, heightened Guidelines. *Id*. at 2088. The government argued that the Ex Post Facto Clause did not apply to the Guidelines because they were "too much like guideposts," rather than mandatory requirements. *Id*. at 2086. The Supreme Court rejected the argument because the district court was required to consider the Guidelines, even if it was not entirely bound by them. *Id*. at 2087. Because a Guidelines variance "was possible, [but] was burdensome," typically "a defendant would receive a within-guidelines sentence." *Id*. at 2082. Because district courts were required to consider the Guidelines when sentencing a defendant, any "increase in the guidelines range applicable to an offender created a significant risk that he would receive a higher sentence." *Id*. at 2083. Thus, though the Guidelines were technically advisory, "'the Guidelines are in a real sense the basis for the sentence.'" *Id*. (citation omitted).

The same principles apply here. While the Guidelines were technically advisory when this Court sentenced Mr. Jefferson, the Court was required to - and did - consider the Guidelines in deciding upon the sentence. As in *Peugh*, "the exercise of [the Court's] discretion" was

9

1  "cabin[ed]" by the Guidelines. *Id*. at 2084. Because the Guidelines provided the starting point for
2  the Court's decision, and informed that decision, their advisory nature does not change *Johnson*'s
3  substantive nature.

        b.    <u>The Ninth Circuit Has Retroactively Applied ACCA Changes to the Guidelines</u>

6        The Ninth Circuit has previously applied changes to the ACCA retroactively to the
7  Guidelines, in circumstances similar to those here. In *Reina-Rodriguez v. United States*, 655 F.3d
8  1182 (9th Cir. 2011), the petitioner had an earlier conviction under Utah law for "burglary of a
9  dwelling," which qualified as "a felony 'crime of violence' under the Guidelines." 655 F.3d at
10 1186. He argued that Utah's definition of "dwelling" was broader than that under the Guidelines,
11 and that he had not burglarized a dwelling as such a building is defined by the Guidelines. *Id*. He
12 relied on a previous decision in which the Ninth Circuit had "overruled" precedent allowing "state
13 statutes [to] satisfy the categorical inquiry when they define burglary to include non-buildings
14 adapted for overnight accommodation." *United States v. Grisel*, 488 F.3d 844, 851 n.5 (9th Cir.
15 2007). However, that decision narrowing the scope of the ACCA had conducted a categorical
16 inquiry as to the meaning of "dwelling" under the ACCA, not under the Guidelines. *Id*. at 849-50.
17       The petitioner argued that *Grisel* applied retroactively to his case. *Reina-Rodriguez*, 655
18 F.3d at 1187. The district court rejected his argument, noting it was unclear whether *Grisel*
19 applied retroactively, and whether it applied to the petitioner's case. *Id*. The Ninth Circuit noted
20 that *Grisel* announced a substantive rule when applied to the ACCA, because it "'narrow[ed] the
21 scope of a criminal statute.'" *Id*. at 1189 (citation omitted). There, as in this case, the United
22 Stated argued that *Grisel* was procedural as applied to the Guidelines because it "'only altered the
23 permissible methods for determining' whether a sentence enhancement can be imposed." *Id*.
24 (quoting the Government's brief). The Ninth Circuit rejected this argument, holding that *Grisel*
25 was substantive because "it altered the conduct that substantively qualifies as burglary under the
26 categorical approach." *Id*. It therefore applied retroactively to the Guidelines. *Id*. The Court held
27 that the rule announced in *Grisel*, as applied to the ACCA, was substantive. *Id*. at 1189. This
28 ended the inquiry; what mattered was that "*Grisel* announced a substantive rule, rather than a

10

procedural one," not whether that rule might somehow become procedural when applied to the Guidelines. *Id.*

The same approach applies here. *See United States v. Rios*, -- F. Supp. 3d --, 2016 WL 4472996, at *4 (E.D. Wash. Aug. 12, 2016) (noting that Reina-Rodriguez "precludes the as-applied approach to retroactivity," and holding that "through *Reina–Rodriguez, Welch*'s holding that *Johnson* is substantive and retroactive in the ACCA context binds this Court to the conclusion that *Johnson* applies retroactively to the Guidelines."). Under Ninth Circuit precedent, a substantive change in rule does not become procedural merely because it is applied to the Guidelines rather than to the ACCA. *Accord United States v. Garcia*, -- F. Supp. 3d --, 2016 WL 4364438, at *6 (N.D. Cal. Aug. 16, 2016) (relying on *Reina-Rodriguez*).[4]

      c.    The Weight of Circuit Authority Tilts in Favor of Applying the *Johnson* Rule to the Guidelines

Most circuit Courts of Appeal to consider this issue have held that Johnson applies retroactively to the Guidelines.[5] *See In re Hubbard*, 825 F.3d 225, 233-35 (4th Cir. 2016) (holding that *Johnson* announced a substantive rule, which retroactively applies to the Guidelines); *Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016) (citing *Hubbard*, 825 F.3d at 229-35); *In re Patrick*, -- F.3d --, 2016 WL 4254929, at *3-4 (6th Cir. Aug. 12, 2016) (same); *In re Encinias*,

---

[4] Every reported district court opinion within the Ninth Circuit to examine this issue has reached the same conclusion, relying on *Reina-Rodriguez* to do so. *See United States v. Dean*, -- F. Supp. 3d --, 2016 WL 1060229 (D. Or. March 15, 2016) (holding that Johnson applied retroactively to the Guidelines); *United States v. Bercier*, -- F. Supp. 3d --, 2016 WL 3619638, at *3-5 (E.D. Wash. June 24, 2016) (same); *United States v. Cloud*, -- F. Supp. 3d --, 2016 WL 3647785, at *4-6 (E.D. Wash. June 24, 2016) (same); *United States v. Gentry*, -- F. Supp. 3d --, 2016 WL 3647331, at *6 (D. Or. July 7, 2016) (same); *United States v. Hoopes*, -- F. Supp. 3d --, 2016 WL 3638114, at *7 (D. Or. July 5, 2016) (same); *United States v. Tomisser*, -- F. Supp. 3d --, 2016 WL 3774128, at *4 (E.D. Wash. July 12, 2016) (same); *Pressley v. United States*, -- F. Supp. 3d --, 2016 WL 4440672, at *2 (W.D. Wash. Aug. 11, 2016) (same); *Rios*, 2016 WL 4472996, at *4 (same).

[5] The First Circuit has not so held, but has "assumed without deciding" that the "residual clause of the career offender guideline is unconstitutional . . . ." *United States v. Fields*, 823 F.3d 20, 33 (1st Cir. 2016) (noting the Government had conceded as much); *see also United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016) ("we assume without deciding that *Johnson*'s holding nullifies § 4B1.2(a)(2)'s identically worded residual clause"). Other Courts of Appeal have applied Johnson to the Guidelines on direct appeal, but have not yet decided whether Johnson applies retroactively to the Guidelines. *See United States v. Calabretta*, -- F.3d --, 2016 WL 3997215, at *3-5 (3d Cir. July 26, 2016) (same); *United States v. Hurlburt*, -- F.3d --, 2016 WL 4506717, at *4 (7th Cir. Aug. 29, 2016).

821 F.3d 1224, 1226 & n.4 (10th Cir. 2016) (same). These courts have rejected the Government's argument "that a rule can be substantive in one context but procedural in another." *Hubbard*, 825 F.3d at 234; *accord In re Patrick*, -- F.3d --, 2016 WL 4254929, at *3. This conclusion squares with the Ninth Circuit's reasoning in *Reina-Rodriguez*.

These decisions thus provide further support for the Court's conclusion that *Johnson* applies here.[6]

C. <u>Entitlement to Relief</u>

Having determined that Mr. Jefferson did not waive his right to bring a Johnson claim, and having determined that *Johnson* may be applied retroactively to a post-conviction challenge to a Guidelines sentence, the Court must now determine whether *Johnson* alters Mr. Jefferson's sentence.

The Presentence Report assigned Mr. Jefferson an offense level of 20 based on his Section 487 conviction. Docket No. 11 ("PSR") at 5; *see also* Mot. at 7. The Probation Office determined that this offense "qualifies as a crime of violence under USSG § 4B1.2" because "[t]aking

---

[6] Although these circuits have refused to apply *Johnson* retroactively to the Guidelines, they have done so based "on their own precedent and are at odds with the reasoning and conclusion of our binding precedent." *In re Patrick*, 2016 WL 4254929, at *3. The Eleventh Circuit has held that the Guidelines cannot be challenged for vagueness. *See United States v. Matchett*, 802 F.3d 1185, 1193–96 (11th Cir. 2015). Because it does not allow the Guidelines to be challenged for vagueness, it has held that petitioners may not rely on Johnson when challenging a sentence imposed under the Guidelines. *In re Griffin*, 823 F.3d 1350, 1354, 1356 (11th Cir. 2016). Similarly, in *Donnell v. United States*, the Eighth Circuit observed that that circuit had not decided "[w]hether an advisory sentencing guideline is susceptible to a vagueness challenge" at all. 826 F.3d 1014, 1015–16 (8th Cir. 2016). It forbade a petitioner from bringing a successive Section 2255 motion because, for the petitioner to rely on *Johnson*, the circuit would have to "announce a second new rule." Because the petitioner's claim would require the Eighth Circuit to create a new rule that had not been announced in *Johnson*, the court held that Johnson did not permit a successive Section 2255 motion. By contrast, "the Ninth Circuit ha[s] long held that the Sentencing Guidelines could be challenged on vagueness grounds." Opp. at 6 (citing *United States v. Johnson*, 130 F.3d 1352 (9th Cir. 1997)). Applying *Johnson* retroactively to the Guidelines would thus not require the Ninth Circuit to "announce a second new rule," and does not conflict with established Circuit precedent. Thus, the Eighth and Eleventh Circuits' reasoning is not persuasive.

In *In re Arnick*, the Fifth Circuit stated that whether *Johnson* applied to the Guidelines at all was an open question, and noted that "the Supreme Court has not addressed whether this arguably new rule of criminal procedure applies retroactively to cases on collateral review." 826 F.3d 787, 788 (5th Cir. 2016). Because *Welch* has held that *Johnson* announced a substantive rule that *does* apply retroactively on collateral review, the Fifth Circuit's reasoning is unpersuasive.

property directly from another person presents a serious potential risk of physical injury to another." PSR at 5. The PSR does not state whether Mr. Jefferson's Section 487 violation qualified as a crime of violence under the Residual Clause or another clause of the sentencing guidelines. Additional adjustments set Mr. Jefferson's total offense level at 19. *See id.*

Because the Residual Clause has since been invalidated, Mr. Jefferson's sentence could be properly enhanced only if it was based on an enumerated offense, or if it "had as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B.1.2(a)(1). The offenses enumerated at the time Mr. Jefferson was sentenced were "burglary of a dwelling, arson, or extortion, [or crimes that] involve[] use of explosives." § 4B.1.2(a)(2). Because the Section 487 conviction is none of these, Mr. Jefferson's sentence can only stand if Section 487 has physical force as an element. Section 487 does not require physical force. The Penal Code section states that "[g]rand theft is theft committed . . . [w]hen the property is taken from the person of another." 487(c). The Ninth Circuit has recognized that "the use or threat of physical force is not an element of grand theft from a person." *United States v. Wofford*, 122 F.3d 787, 793 (9th Cir. 1997) (holding that this crime fell into the Residual Clause); *accord People v. Jones*, 2 Cal. App. 4th 867, 869 (1992) ("Where the elements of force or fear *are absent*, a taking from the person is grand theft, a lesser included offense of robbery.") (emphasis added).[7]

The United States argues that Mr. Jefferson should not be resentenced because he still has a violent criminal history. Opp. at 13-14. The PSR shows that Mr. Jefferson has been convicted of several other felonies and violent misdemeanors. *See* PSR at 6-11. It is unclear whether the Government is arguing (1) that one of Mr. Jefferson's other convictions qualifies as a violent felony under the current version of Section 4.B1.2, (2) that one of Mr. Jefferson's other convictions qualified as a violent felony under the version of Section 4B1.2 in place at the time Mr. Jefferson was sentenced, or (3) that Mr. Jefferson's overall history justifies a higher sentence

---

[7] *See also People v. Brew*, 2 Cal. App. 4th 99, 106 (1991) ("In order to convict appellant of grand theft from the person, it would have been necessary for the jury to find that the money taken was either on the body of Patel or in her clothing or in a receptacle being carried by her at the time."); *People v. Morales*, 49 Cal. App. 3d 134, 139 (1975) ("Where the element of force or fear is absent, a taking from the person is only theft; although by virtue of Penal Code section 487 it constitutes grand theft regardless of the value of the property.").

1 than would be imposed for the correctly calculated offense level.

2 As to the first argument, the Government cited no authority that would permit the Court to re-sentence Mr. Jefferson under today's version of Section 4.B1.2. As to the second argument, the Government has not specifically identified another felony conviction in the PSR that would satisfy the portion of the 2014 version of Section 4.B1.2 which remained constitutional. To do so, the Government would need to point to a conviction in Mr. Jefferson's record, "punishable by imprisonment for a term exceeding one year," that is also "burglary of a dwelling, arson, or extortion, involves use of explosives," or "has as an element the use, attempted use, or threatened use of physical force against the person of another." As to the third, the Court notes that the Government previously advocated for the minimum sentence under the guideline range the Court and the Government previously thought was applicable. *See* Docket No. 15 at 2, 5 (advocating for a 63-month term of imprisonment). Although the Court granted a slight variance from the prior Guideline range, the Court did take the Guidelines into account. It cannot say that with a new corrected Guideline range, it would impose precisely the same sentence, especially since as noted above the 54 month sentence could constitute a substantial upward variance. The Court cannot pre-judge what its Section 3553 analysis would yield in light of the corrected Guidelines range. Because Mr. Jefferson's Section 487 violation can no longer sustain an enhanced sentence under Johnson, the Court will resentence Mr. Jefferson.

The briefs presented to the Court thus far have focused on Johnson, and do not contain sufficient facts for the Court to resentence Mr. Jefferson on the current record. So that the Court may properly consider the facts in light of *Johnson*, the Court refers counsel to the United States

///
///
///
///
///
///
///

14

Probation Office for the Northern District of California in order to obtain a revised Presentence Investigation Report. Within seven (7) days of the filing of this revised Report, counsel shall submit a stipulation with a proposed briefing schedule for their sentencing memoranda and a new sentencing hearing date.

This order disposes of Docket Number 34.

**IT IS SO ORDERED**.

Dated: October 19, 2016

_____
EDWARD M. CHEN
United States District Judge